UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOEL KING, #760461,

        Petitioner,                      Case Number: 16-13524
                                                  Honorable Linda V. Parker
v.

THOMAS WINN,

        Respondent.
_____/


## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Joel King ("Petitioner") is presently in the custody of the Michigan Department of Corrections, pursuant to convictions for three counts of first-degree criminal sexual conduct and one count of assault and battery. Petitioner raises two claims for relief: (i) defense counsel was ineffective in failing to object to testimony from two witnesses which vouched for the credibility of the victim, and (ii) appellate counsel was ineffective for failing to raise this issue on appeal. The Court finds that Petitioner's claims do not satisfy the strict standards for habeas corpus relief. Accordingly, the petition will be denied.

**I.**     **Background**

Petitioner was charged in two separate cases in Oakland County for the sexual assault of his step-daughter, K.D., and the assault and battery of another stepdaughter, T.S. The cases were separately filed because they were initiated by separate investigating

jurisdictions. *People v. King*, Nos. 297667, 303329, 2011 WL 4949709, *1 (Mich. Ct. App. Oct. 18, 2011). The trial court consolidated the cases for trial. *See id.*

K.D. testified that she was nine-years-old at the time of the trial. Petitioner used to be her stepfather and began living with the family when K.D. was five or six years old. K.D. testified that Petitioner began touching her private area when she was six years old. Petitioner would come visit her in her bedroom at night. He would place his hand on her private area, sometimes outside her underwear, sometimes inside. She also testified that Petitioner would sometimes put his hand inside her private area. For a long time, K.D. did not tell anyone about the touching because she was frightened that Petitioner might harm her mother. After Petitioner and her mother divorced, K.D. told her mother's boyfriend, Ryan Conrad, about the touching. K.D. then went to Care House[1] and spoke to a woman named Sarah about what had happened.

T.S., who was sixteen-years-old at the time of trial, testified that Petitioner had been her stepfather. In 2004, T.S.'s mother was sick and unable to care for her infant triplets. Petitioner was helping to care for them. He awakened T.S. (who was then ten or eleven) and told her to come into another room. Petitioner directed T.S. to an empty room with two metal folding chairs. She sat in one, Petitioner in the other. Petitioner asked T.S. whether she had seen Petitioner and her mother kiss. T.S. was confused by the question, but Petitioner persisted. T.S. testified that at some point she was sitting in

---

[1] Care House is "an agency that assists families and children in cases involving allegations of sexual abuse." *Kataja v. Nessel,* --- Fed. App'x ---, 2019 WL 2245933, *2 (6th Cir. May 24, 2019).

2

Petitioner's lap, though she did not recall how she ended up there. Petitioner asked T.S. to show him how he and her mom kiss. She declined. Nevertheless, Petitioner kissed T.S. on the lips for about two or three minutes. When he stopped kissing her, Petitioner told T.S. to go to bed and not to tell anyone what they had done. T.S. did not tell anyone for several years. In 2009, T.S. told her father, Tom Swan, what Petitioner had done. T.S. was also interviewed by someone at Care House.

Aimee King, the mother of K.D. and T.S., testified that she had eight children and that Petitioner was her ex-husband. King filed for divorce from Petitioner in February 2009. During their marriage, Petitioner threatened to kill her and take her children to Alaska, hide them and kill himself. King testified that in April 2009, she learned about allegations made by T.S. against Petitioner, which prompted her to take T.S. to Care House. She also learned about a statement K.D. made about Petitioner and took her to Care House as well. Ms. King also contacted Child Protective Services to investigate the allegations.

Ashleigh Brotherson, a Child Protective Services (CPS) supervisor, testified that, in April 2009, she had been assigned to investigate allegations made by T.S. and K.D. Brotherson explained the course of an investigation conducted by CPS and identified the team members involved in handling the investigation. She explained that the 2009 investigation was substantiated, meaning "the Department feels that there was sufficient evidence to say that the allegations did happen." (1/22/2010 Tr. at 270, ECF No. 7-6, Pg. ID 946.)

3

Waterford Police Detective Gregory Drumb testified that he watched the Care House interviews of T.S. and K.D. and ultimately requested that the prosecutor criminally charge Petitioner.

The defense called eight witnesses, several of whom testified generally about Petitioner's good relationship with his daughters. The defense recalled Aimee King. She denied telling Petitioner's family members that she was going to "destroy him" and that "if he divorces me he's gonna be in trouble." (1/25/10 Tr. at 74, ECF No. 7-7, Pg. ID 1044.)

Petitioner testified in his own defense. He described his marital relationship with Aimee King as tumultuous. He testified that the relationship proceeded more smoothly when he was working and able to provide her with money. When he stopped giving her money, things became more difficult. Petitioner denied inappropriately touching K.D. or T.S. He testified that he and Aimee had several conversations with their children about body safety. Petitioner admitted that, in 2004, Child Protective Services investigated the family. He had intervened in an argument between Aimee and their son, T.R. Petitioner grabbed T.R. by the shirt and inadvertently grabbed T.R.'s chest as well, leaving a bruise. He never intended to hurt T.R. and did not have to appear in court for that incident.

Petitioner was convicted by a jury in Oakland County Circuit Court and, on March 15, 2010, sentenced to 25 to 40 years imprisonment for each of the criminal sexual conduct convictions, and 52 days, time served, for the assault conviction.

Petitioner's convictions were affirmed on appeal. *King*, 2015 WL 4949709, *leave denied*, 492 Mich. 866 (Mich. Sept. 4, 2012).

Petitioner returned to state court to file a motion for relief from judgment. The trial court denied the motion. (*See* 9/25/2014 Order, ECF No. 7-16.)[2] Both Michigan appellate courts denied Petitioner leave to appeal the trial court's decision. *People v. King*, No. 325183 (Mich. Ct. App. Jan. 21, 2015); *People v. King*, 500 Mich. 872 (Mich. 2016).

Petitioner then filed the pending petition for a writ of habeas corpus through counsel. He asserts the following grounds for relief:

> I. Petitioner was denied his right to a fair trial and to effective assistance of counsel as guaranteed by both the Michigan and the United States Constitutions when his trial counsel failed to object to clearly inadmissible and highly prejudicial testimony by the officer in charge and the protective services worker investigating the case that vouched for the credibility of the complaining witness and in essence told the jury that they believed Petitioner was guilty of criminal sexual conduct in the first degree.
>
> II. Petitioner was denied effective assistance of appellate counsel and therefore has demonstrated good cause for not raising the issue on direct appeal.

(ECF No. 1, Pg. ID 21, 25.)

**II. Standard**

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

---

[2] The trial court reissued its order on December 3, 2014, because Petitioner's attorney did not receive a copy of the earlier order.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541

U.S. 652, 664 (2004). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id.* Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Discussion

#### A. Ineffective Assistance of Trial Counsel Claim

Petitioner's first claim for relief concerns portions of the testimony of two witnesses – CPS investigator Ashleigh Brotherson and Detective Gregory Drumb. Petitioner argues that both witnesses improperly vouched for K.D.'s testimony, and that defense counsel's failure to object to this testimony denied Petitioner his Sixth Amendment right to the effective assistance of counsel.

Petitioner raised this claim for the first time in his motion for relief from judgment in the trial court. Respondent argues that this claim is procedurally defaulted because the state court denied review based upon Petitioner's failure to comply with a state procedural rule. Procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *Trest v. Cain*, 522 U.S. 87, 89 (1997). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). The Court finds it is more efficient to proceed to the merits of this claim.

Petitioner contends that CPS agent Ashleigh Brotherson and the officer in charge, Detective Gregory Drumb, improperly vouched for the victim's credibility and, consequently, vouched for Petitioner's guilt. During cross-examination of Brotherson, defense counsel elicited testimony that in 2004 Petitioner had been investigated regarding suspected abuse of Petitioner's stepson. Brotherson testified that, after an investigation, the allegations were not substantiated. On redirect examination, the prosecutor questioned Brotherson as follows:

> Prosecutor: She asked you –(inaudible)—2004, was substantiated or not. Was the 2009 case substantiated?
>
> Brotherson: Yes, it was.
>
> Prosecutor: Okay, and was that with respect to [T.S. and K.S.]? Or is it the same case?
>
> Brotherson: It's the same case.

8

> Prosecutor: The same case.
>
> Brotherson: Yes.
>
> Prosecutor: Okay. Um, and substantiated means when – what?
>
> Brotherson: It means that the Department feels that there was sufficient evidence to say that the allegations did happen.

1/22/2010 Tr. at 270; ECF No. 7-6, Pg. ID 946.

The prosecutor elicited the following testimony during direct examination of Detective Drumb:

> Prosecutor: Okay, and after your investigation was complete in regards to this case you then go to the prosecutor's office to request charges?
>
> Det. Drumb: For both inciden[ts], yes. The one involving [T.S.] and with [K.D.].
>
> Prosecutor: Okay, and with respect to [K.D.], was – is it your understanding that the charges were what initially?
>
> Det. Drumb: First-degree criminal sexual conduct.
>
> Prosecutor: And what was that?
>
> Det. Drumb: That would include penetration.
>
> Prosecutor: Was it digital penetration?
>
> Det. Drumb: Fingers to vagina specifically.
>
> Prosecutor: Okay.
>
> Det. Drumb: Or fingers in vagina.
>
> Prosecutor: And was that – that was based on what?

9

> Det. Drumb: Based on everything that was submitted to the Prosecutor's Office, my reports, Detective Matich's reports, um, another document, including written statements, um, that were collected by various witnesses.
>
> Prosecutor: Okay, and do you typically submit requests for charges – well, strike that. The ultimate decision is whose, yours or the prosecutor's?
>
> Det.Drumb: It's the Prosecutor's Office.
>
> Prosecutor: And if you disagree, do you voice that disagreement?
>
> Det. Drumb: Um, personally I don't very often unless it's a case that I feel very strongly about.
>
> Prosecutor: You were present for [K.D.]'s interview, correct?
>
> Det. Drumb: Yes, ma'am.
>
> Prosecutor: Okay, and based upon the information that was provided during the course of your investigation did you believe that an act of penetration or requesting that type of charge was appropriate?
>
> Det. Drumb: Definitely.
>
> Prosecutor: And is that based upon your – your witnessing of the interview?
>
> Det. Drumb: It was based on what [K.D.] said during that interview.

*Id.* at 272-74, Pg. ID 948-50.

The trial court, the last state court to issue a reasoned opinion on this claim, held that the testimony was not improper because neither witness expressed a personal belief regarding the credibility of the victims. *See* 9/22/2014 Op. & Ord. at 2-4. Consequently, the trial court also denied Petitioner's claim that counsel was ineffective for failing to object. *Id.*

To show entitlement to relief, Petitioner must show that the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court precedent. The clearly established Supreme Court precedent for ineffective assistance of counsel claims is *Strickland v. Washington,* 466 U.S. 668 (1984). An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Id.* at 687. Under AEDPA, the standard for obtaining relief under *Strickland* is very difficult to meet because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). This doubly deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 571 U.S. 12, 15 (2013).

The state court's determinations regarding the nature of the challenged testimony and counsel's performance are reasonable. The Sixth Circuit Court of Appeals addressed this issue in *Garcia v. Burt,* No. 17-1951, 2018 WL 846591 (6th Cir. Feb. 5, 2018). In *Garcia,* a petitioner who had been convicted of first- and second-degree criminal sexual conduct in connection with the abuse of his step-daughter challenged an assertion that the victim's claims had been "substantiated." *Id* at *1. At trial, Amy Allen, a social worker for Care House, testified that she met with the victim after the allegations against her step-father were raised. Allen testified that "she worked with children whose cases had been 'substantiated' by Child Protective Services, meaning that the agency had 'at least

11

substantiated that the child had been sexually abused.'" *Id.* at *4. Because the state court did not address the merits of this claim, the Sixth Circuit conducted a *de novo* review, and found no error. *Id.* Although the social worker testified that she worked on claims that had been "substantiated", she also testified that she had no personal knowledge about whether the children victims with whom she worked had been abused. She also did not indicate that she was privy to information not presented to the jury regarding Garcia's case. *Id.* Based upon these circumstances, the Sixth Circuit held that testimony did not violate the petitioner's due process right to a fair trial.

Similarly, Brotherson's testimony in this case did not imply that she had special knowledge not presented to the jury about the allegations against Petitioner. She did not render an opinion about the credibility of either victim or Petitioner's ultimate guilt or innocence. Brotherson described the course of an investigation in general, and the one at hand specifically, from the time a complaint is made until the investigation is complete. It likely would have come as no surprise to the jury that an investigating agency had concluded that the victims' allegations were substantiated to the extent that a referral to the prosecutor's office would occur.. Brotherson's testimony was not improper. Consequently, counsel's failure to object was not outside the wide range of reasonably competent assistance.

Further, Petitioner has not shown prejudice. The portion of Brotherson's testimony to which Petitioner objects was a small part of her testimony, and, considered in the context of her overall testimony, was not improper. Brotherson merely explained

12

the steps that preceded the criminal charges. The state court did not unreasonably apply *Strickland* in concluding that defense counsel was not ineffective.

Petitioner also argues that counsel was ineffective in failing to object to Detective Drumb's testimony. Detective Drumb testified that the first-degree criminal sexual conduct charges were based on "everything that was submitted to the Prosecutor's Office, my reports, Detective Matich's reports, on, or any other document, including written statements, that were collected by various witnesses." (1/22/210 Tr. at 272-73, ECF 7-6, Pg. ID 948-49.) He also testified that, based upon K.D.'s interview, he believed the first-degree criminal sexual conduct charge was appropriate. *Id.* Petitioner fails to show that this testimony was improper.

In *Cooper v. Sowders*, 837 F.2d 284 (6th Cir.1988), the Sixth Circuit held that it was fundamentally unfair and a violation of due process to permit a detective to testify as an expert witness that all the evidence linked the petitioner, and no one else, to the crime. The Sixth Circuit concluded that "[t]he opinion-testimony had a direct influence on the jury's consideration of petitioner's guilt or innocence." *Id.* at 287. In contrast, in this case, Detective Drumb did not give an opinion about Petitioner's guilt or innocence. Nor did he testify that K.D. and T.D. were credible.

Further, Detective Drumb testified that his prepared report was not his own opinion. He testified that he only documented what was said during K.D.'s Care House interview and other interviews.

Counsel for the defense elicited the following testimony during cross-examination of Detective Drumb:

> Def Counsel: Okay. Do you recall during her interview she said he touched the outside part?
>
> Det. Drumb: I'd have to look at my notes. I---my understanding was that he touched everything he could touch, the whole kit and kaboodle, the---inside, outside, all around. That's the way that I interpreted that interview.
>
> Def. Counsel: And that's what your report says?
>
> Det. Drumb: I don't know what my report says. That's the way that I interpreted the interview. My report is, like I said, there's not anything in my report that is my opinion, this is—I'm only documenting what is said during the interview and then any type of, um, interviews that I have with anybody else involving this incident.

1/22/2010 Tr. *at* 279-280; ECF No. 7-6, Pgs ID 955-956.

Further, the Court presumes that, under the circumstances, defense counsel's failure to object was "sound trial strategy." *Strickland*, 466 U.S. at 694. Petitioner fails to rebut this presumption. Defense counsel likely concluded that Detective Drumb's testimony was not improper vouching or bolstering and, therefore, not objectionable. Petitioner fails to show that this conclusion fell outside the broad range of reasonable trial conduct, or that the state court's conclusion finding no deficient performance was an unreasonable application of Supreme Court precedent.

Moreover, even assuming Detective Drumb's testimony stating that the charges were appropriate was objectionable, Petitioner fails to show any prejudice arising from defense counsel's failure to object. Viewed in context, Detective Drumb did not state or

14

imply any personal knowledge of the credibility of any witness. His brief statement that the charges were appropriate was isolated and the Court sees no possibility that it may have had a prejudicial impact on the defense.

Lastly, the jury was instructed to judge a police officer's testimony by the same standard as the testimony of any other witness. (1/26/2010 Tr. at 133, ECF No. 7-8, Pg. ID 133.) Jurors are presumed to follow their instructions. *United States v. Olano*, 507 U.S. 725, 740 (1993). And the Court has no reason to believe the jurors did not follow their instructions in this case.

For all of these reasons, habeas relief is denied on this claim.

### B. Ineffective Assistance of Appellate Counsel

Finally, Petitioner argues that his appellate attorney was ineffective in failing to raise an ineffective assistance of trial counsel claim on direct review. It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). In fact, "the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail ... is the hallmark of effective appellate advocacy." *O'Sullivan v. Boerckel*, 526 U.S. 838, 858 (1999) (quotation marks and citations omitted).

Petitioner has failed to show that his ineffective assistance of trial counsel claim was meritorious. "Appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir.

2010), quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir.2001). Therefore, habeas relief is denied on this claim.

## IV.  Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (2003) (internal quotes and citations omitted).

Reasonable jurists would not find the Court's assessment of Petitioner's claims to be debatable or wrong. The Court therefore declines to issue a certificate of appealability.

## V.  Order

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner may proceed *in forma pauperis* on

appeal because an appeal may be taken in good faith. 28 U.S.C. § 1915(a)(3).

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: October 24, 2019